UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

3BTECH, INC.,

    Plaintiff,

    v.

JIE WANG,

    Defendant.

Case No. 3:20-CV-637 JD

## OPINION AND ORDER

Jie Wang was employed as an accounting manager with 3BTech, a technology company in Indiana. Over the course of several weeks in July 2020, she allegedly used her position to embezzle almost $2 million from 3BTech and two related companies. At the time, Ms. Wang was in the middle of a divorce proceeding in California with her husband, who had various levels of involvement with 3BTech and the two companies. 3BTech is now suing Ms. Wang over the alleged embezzlement on the basis of a federal statute and several state causes of action. Ms. Wang responded to 3BTech's suit with this motion to dismiss. She argues in part of her motion that the Court should dismiss 3BTech's federal claim because it is implausible. For the following reasons, the Court agrees.

**I. Statement of Facts**

Plaintiff 3BTech, Inc., is a corporation focused on technology services that is incorporated and has its principal place of business in Indiana. Defendant Jie Wang was employed as an accounting manager for 3BTech in Indiana at all the times relevant to this case

and has been embroiled in divorce proceedings with Jianqing Zhu, 3BTech's president, since the facts giving rise to this case occurred. (DE 13 at 2; DE 36 at 2–3.)

Ms. Wang's job as an accounting manager gave her access to funds that 3BTech and other related companies held. In July 2020, DC3B, LLC, a related company that 3BTech used to hold real estate, was holding $1.6 million of escrow funds from the sale of one property that 3BTech planned to use to purchase a new property. It fell to Ms. Wang to oversee the purchase of the new property using the escrow funds. (DE 13 at 4–5.) Instead of using the funds for the property purchase, she allegedly transferred the $1.6 million to her family trust account and then transferred $1.58 million of the sum to her personal bank account at Bank of America. (*Id.* at 5.) She separately is alleged to have used her position to transfer $32,500 of 3BTech's corporate funds to pay for legal expenses from her divorce and $200,000 from another related company, Hoverzon, LLC, to put into her personal account. (*Id.* at 6–7.) Ms. Wang never received authorization to make any of the $1.832 million in transfers, and, when confronted, conditioned the money's return on Mr. Zhu agreeing to certain terms related to their divorce proceedings. (*Id.* at 7.)

3BTech and DC3B initially filed a complaint against Ms. Wang and her lawyer, who they alleged had been paid with and made use of some of the funds. The complaint contained one federal claim, an allegation that Ms. Wang was liable under 12 U.S.C. § 503 for making false statements or reports to a bank with intent to defraud or deceive the bank. Section 503 traditionally gives those who have been harmed by crimes certain bank insiders commit a way to recover in a civil action. 3BTech's complaint also contained several state claims including fraud, conversion, and breach of fiduciary duty. (DE 1 at 6–11.) The Court subsequently issued an order questioning whether § 503 applied to Ms. Wang because she was not a bank insider. (DE

10.) Because 3BTech and DC3B had not alleged diversity jurisdiction, their § 503 claim and the federal question it raised was the only thing tying the case to federal court. 3BTech responded to the Court's order with two filings: an amended complaint that dropped DC3B as a co-plaintiff (DE 13) and a supplement to the amended complaint in support of jurisdiction (DE 14) that now alleged both federal question jurisdiction in connection with the § 503 claim as well as diversity jurisdiction between 3BTech and Ms. Wang.

Ms. Wang moved to dismiss 3BTech's amended complaint and supplement in support of jurisdiction. (DE 35.) She argued that the Court should first dismiss 3BTech's § 503 claim under Federal Rule of Civil Procedure 12(b)(6) because the statute does not apply to someone like Ms. Wang, which renders the claim implausible. (DE 36 at 14.)  Then, she argued, the court should dismiss the remaining state law claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because 3BTech improperly colluded with the other involved companies to allege diversity jurisdiction. (*Id.* at 1–2.) The Court only addresses Ms. Wang's argument about the applicability of § 503 in this order and will consider her diversity jurisdiction arguments in a subsequent order.

**II. Standard of Review**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). That statement must contain

3

sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right of relief above the speculative level, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is a "'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

**III. Discussion**

Ms. Wang argues that the Court should dismiss 3BTech's 12 U.S.C. § 503 claim as implausible because the statute does not apply to someone like her who was neither a bank officer nor a bank director when she allegedly embezzled the companies' funds. (DE 36 at 14.) 3BTech counters that Ms. Wang is reading the statute too narrowly and that, despite the statute's explicit language, both caselaw and statutory history support a finding that the statute applies to the facts of this case. (DE 45 at 12.) Thus, the question of dismissal lies solely with whether § 503 deserves the broader interpretation 3BTech claims it does.

Before proceeding to answer that question, it is first necessary to understand the history and importance of one of the criminal statutes to which § 503 is tied and that 3BTech asserts is the trigger for an application of § 503 here: 18 U.S.C. § 1005. Section 1005 criminalizes the act of making a false report or statement to a bank with the intent to defraud or deceive the bank. 18 U.S.C. § 1005. Section 503 sets the parameters for pursuing a civil remedy against someone who has violated § 1005:

> If the directors or officers of any member bank shall knowingly violate or permit any of the agents, officers, or directors of any member bank to violate . . . [Section] 1005 . . . of Title 18, United States Code, every director and officer participating in or assenting to such violation shall be held liable in his personal and individual capacity for all damages which the member bank, its shareholders, or any other persons shall have sustained in consequence of such violation.

12 U.S.C. § 503. In this case, 3BTech invokes the civil remedy under § 503 because it asserts that Ms. Wang violated § 1005 by falsely telling the relevant banks that she had the authority to transfer company funds to her personal bank accounts. (DE 13 at 8–9.) For her part, Ms. Wang does not focus on whether she could be found guilty under § 1005. She only challenges whether she could subsequently be held civilly liable under § 503.

The specific focus on § 503 as opposed to both § 503 and § 1005 owes to the different scopes of coverage the two statutes appeared to have developed since they were enacted. For many years, § 1005 had a narrower reach than it does today. The first paragraph of § 1005 states that the statute criminalizes the relevant conduct by anyone who is "an officer, director, agent or employee" of a Federal reserve bank, member bank, or other covered entity. Courts interpreted that language to limit criminal liability under the statute only to those bank insiders enumerated in the paragraph. *See United States v. Van Brocklin*, 1997 U.S. App. LEXIS 20745, at 22–23 (8th Cir. June 6, 1997) (citing *United States v. Barel*, 939 F.2d 26, 40–41 (3rd Cir. 1991); *United States v. Edwards*, 566 F. Supp. 1219, 1220–21 (D. Conn. 1983)). But then in 1989, Congress amended the statute to in part add what is now the statute's broader, fourth paragraph:

> Whoever with intent to defraud the United States or any agency thereof, or any financial institution referred to in this section, participates or shares in or receives (directly or indirectly) any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any financial institution shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

5

18 U.S.C. § 1005. Courts considering the new paragraph for the first time interpreted its language as a sign from Congress that criminal liability under § 1005 was now expanded to include individuals who were not bank insiders. *See Van Brocklin*, 1997 U.S. App. LEXIS 20745, at *24; *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 629 (S.D.N.Y. 2013); *United States v. Christensen*, 344 F. Supp. 2d 1294, 1296 (D. Utah 2004); *United States v. UBS Sec. LLC*, 2019 U.S. Dist. LEXIS 215372, at *50 – 52 (E.D.N.Y. Dec. 10, 2019).

But Congress never made a similar amendment to § 503 despite § 503's ties to § 1005. It left § 503 to read, "if the *directors or officers* of any member bank shall knowingly violate or permit any of the agents, officers, or directors or any member bank" to violate § 1005, "every *director and officer* participating in or assenting to such violation" will be held liable. 12 U.S.C. § 503 (emphasis added). Ms. Wang argues the § 503 language means what it says, that § 503 only applies to bank officers and directors who violate § 1005 (DE 36 at 15–17), while 3BTech sees the expansion of § 1005 to non-bank individuals as a strong argument that Congress also wanted § 503 to be expanded in a similar way (DE 14 at 5–6). Ms. Wang has a strong plain meaning argument backed by precedent. *See Jackson v. Blitt Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016) ("As with all questions of statutory interpretation, we start with the text of the statute to ascertain its plain meaning."); *In re Udell*, 18 F.3d 403, 410–11 (7th Cir. 1994) (Flaum, J. concurring) ("The first canon of statutory construction is, of course, that where the language of a statute is clear in its application, the court must apply its plain meaning as written."). And 3BTech has not shown why the Court would be compelled to ignore plain meaning and find that § 503 has a broad enough scope to include a non-bank insider like Ms. Wang.

3BTech first argues caselaw supports its interpretation, contending that the Seventh Circuit has already held that § 503 creates a private cause of action for any person who has

6

sustained damages from a § 1005 violation. (DE 14 at 8; DE 45 at 11.) But the company assigns too much weight to what is actually dicta. 3BTech's argument references the case of *White v. Keely*, which involved allegations of liability under § 1005 and § 503 against bank officers and directors but did not require the court to interpret whether § 503 applied to the parties. *White v. Keely*, 814 F.3d 883 (7th Cir. 2016). The specific passage 3BTech cites reads, "Section 503 of the Federal Reserve Act, meanwhile, creates a private cause of action for any person who has sustained [damages] in consequence of a violation of Section 1005." *Id.* at 888 (internal quotations omitted). The language at first seems to support 3BTech's argument. But put in the context of the entire opinion, which includes an earlier description of § 503 that limits the statute to officers and directors, *id.* at 884–85, the statement is just a brief description of § 503 for the court to establish the statute at issue before moving on to decide the case not by interpreting the statute's applicability but by holding the plaintiff could not show he had been harmed. *See id.* at 889. The court's brief description of the statute is thus not binding. *See Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (explaining that parts of an opinion not integral to the underlying analysis are non-binding dicta).

Where *White* simply does not help 3BTech's argument, a separate case from within the circuit, *Marc Development v. Wolin*, 845 F. Supp. 547 (N.D. Ill. 1993), actively undermines it. In *Wolin*, a bank's attorney who had been sued under § 503 alleged, like Ms. Wang, that he was not in the class of persons that § 503 made personally liable under the statute because he was not a bank officer or director. The court agreed, finding that § 503 "specifically limits personal liability for violations of § 1005 to officers and directors only" and that the plaintiffs had not presented evidence to the contrary. *Id.* The court supported its finding by noting the clear delineations Congress made in the subchapter of the Federal Reserve Act that contains § 503 as

7

to which parties are liable for which violations. "Within this subchapter Congress has made different classes of individuals personally liable for the commission of various violations. When read together, it is apparent that each section was carefully drafted, with Congress deliberately imposing civil liability on different classes of individuals under different sections." *Id.* The Court agrees with the reasoning in *Wolin* and finds enough similarity between it and the current case to find 3BTech's claim against Ms. Wang, who unlike the *Wolin* defendant was not even associated with a bank, implausible.

But even if *Wolin* had not been decided and the Court was left to consider 3BTech's remaining legislative history-based argument on its own, it would come to the same conclusion of implausibility. 3BTech contends that it is "reasonable and logical" to conclude that Congress meant to expand the scope of § 503 when it expanded § 1005 to include individuals who were not affiliated with a bank. Otherwise, it argues, the Court would come to the illogical conclusion that prior to the 1989 amendment of § 1005, all victims of § 1005 violations had a private remedy under § 503 but that after the 1989 amendment, Congress, for some reason, limited the private right of action only to victims of § 1005 perpetrated by bank insiders. (DE 45 at 12.) 3BTech's argument is not as reasonable and logical as the company claims.

3BTech cites no substantive evidence to explain why it would be illogical for Congress to keep § 503 limited to bank insiders and additionally appears to have misread the statutory language in making its argument. First, a review of the history and language of § 503 suggests that keeping its scope limited is exactly what Congress intended to do. Congress never changed the language of § 503 that specified its applicability to directors and officers and did not indicate that the § 1005 amendment had consequences outside the statute to which it applied. Second, the relevant statutory language suggests § 503 did not allow all victims of § 1005 to seek a private

8

remedy before 1989 as 3BTech claims. Prior to 1989, § 1005 criminalized false statements and representations made by officers, directors, agents, and employees of a bank while § 503 only mentioned civil remedies for § 1005 violations committed by officers and directors. 18 U.S.C. § 1005 ("Whoever, being an officer director, agent or employee . . ."); 12 U.S.C. § 503 ("If the directors or officers of any member bank shall . . ."). 3BTech does not explain how both statutes could cover the same set of people even though one appears to cover two classes of individuals while the other appears to cover four. Without evidence to the contrary, it is logical and reasonable, on the basis of the statutory language, to conclude that § 503 applied only to bank officers and directors before Congress amended § 1005 and continued to do so after Congress amended § 1005. Because Ms. Wang, as the parties agree, was not a bank officer or director, (DE 36 at 14; DE 45 at 10–13), the Court cannot find that she is subject to a civil claim under § 503.

**IV. Conclusion**

For those reasons, the Court GRANTS Ms. Wang's motion to dismiss 3BTech's claim under § 503. The Court will address the arguments from Ms. Wang and 3BTech related to the existence of diversity jurisdiction over the remainder of the claims in a subsequent order.

SO ORDERED.

ENTERED: January 13, 2021

                                                      /s/ JON E. DEGUILIO
                                                    Chief Judge
                                                    United States District Court